## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COLUMBIA HOUSING/PNC INSTITUTIONAL
FUND IV LIMITED PARTNERSHIP,
COLUMBIA HOUSING SLP CORPORATION,
OCWEN 2000-LLC, PNC BANK, and
COLUMBIA HOUSING/PNC FUND IV, INC.,

Plaintiffs,

v.

Civil Action No. 06-371

OCWEN FEDERAL BANK FSB, OCWEN
INVESTMENT CORPORATION, and OCWEN
LOAN SERVICING, LLC

Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO DEPOSIT FUNDS INTO THE COURT REGISTRY

### INTRODUCTION

Citing no authority and making no argument, the plaintiffs, Columbia Housing/PNC

Institutional Fund IV Limited Partnership ("PNC Fund IV"), Columbia Housing SLP

Corporation ("Columbia SLP"), Ocwen 2000-LLC ("Ocwen 2000"), PNC Bank ("PNC") and

PNC Fund IV, Inc. ("Fund IV, Inc.") (collectively, the "Plaintiffs"), ask this Court in a

three-paragraph motion to allow it to deposit with the Court Registry up to $17 million that is

indisputably owed to Ocwen Loan Servicing, LLC ("OLS"). The Plaintiffs lay no factual or

legal predicate for their motion, nor do they even attempt to do so. To the extent any basis for

their motion can be found at all, it is in the Complaint, and derives from non-existent,

hypothetical conditions that have no basis in fact or law. As such, the Plaintiffs' motion should

be denied.

## BACKGROUND

### *The Operative Agreements and the Obligation to Pay*

The Plaintiffs' Complaint focuses upon two distinct agreements: (1) the Amended and Restated Operating Agreement of Ocwen 2000-LLC (the "Operating Agreement"); and (2) the Purchase and Sale Agreement, with amendments (the "PSA"). PNC Fund IV and Ocwen Federal Bank FSB ("Ocwen FSB") are the parties to the Operating Agreement. Those entities also are parties to the PSA, as is Ocwen Investment Corp. ("Ocwen Investment"), the other named defendant. Despite being named plaintiffs, Columbia SLP, PNC and Fund IV, Inc. are not parties to either agreement.

For purposes of the present motion, the only operative agreement is the PSA. Section 1.1 of the Eighth Amendment to the PSA obligates PNC Fund IV to make capital contributions to Ocwen 2000 as consideration for its acquisition of beneficial interests in multiple partnerships (the "Payments"). *See* Affidavit of Michael Mosher ("Mosher Aff."), ¶4 and Eighth Amendment to PSA, attached at Tab 2 to Mosher Aff. PNC Fund IV began making Payments in 2000, and to date has paid approximately $10.5 million. *See* Mosher Aff., ¶6. In total, $17 million more is owed through 2014. *See id.* The next payment in the approximate amount of $5.1 million is due in or about July 2006. *See id.* PNC Fund IV has never claimed that it did not receive the partnership interests to which it was entitled, nor that the Payments were not owed for any reason. *See id.*, ¶7.

### *The Plaintiffs' Claim of Controversy*

Under the PSA, PNC Fund IV's obligations to make the Payments "shall be absolute and unconditional except as set forth in this Agreement." *See* PSA Agreement, § 1.1. Notwithstanding this language, the Plaintiffs ask this Court to enter an Order requiring that all the Payments be deposited with the Court, and that OLS receive none of the Payments as they

# 3861232_v2

- 2 -

become due. In their three-paragraph motion, however, the Plaintiffs cite no section of the PSA to support their position. They also cite no case law or authority for this extraordinary request. Instead, they assert merely that such relief is appropriate where "an actual controversy exists between the parties regarding the effect of the dissolution of Ocwen FSB on the parties' respective rights and obligations, if any, pursuant to the PSA...." *See* Motion, ¶ 3.

As such, the dissolution of Ocwen FSB appears to be at the heart of the Plaintiffs' request. The motion does not, however, explain the alleged impact of the dissolution on PNC Fund IV's obligation to make the Payments. In that regard, only the Complaint provides some insight. There, the Plaintiffs argue that Ocwen FSB's dissolution somehow triggers Section 3.3 of the PSA.

Section 3.3 governs PNC Fund IV's rights of offset. It provides that PNC Fund IV may offset its Payment obligations by: (1) the amount of any Indemnity Payment that Ocwen FSB has failed to pay; or (2) any costs incurred by PNC Fund IV as a result of the FDIC's placing Ocwen FSB into receivership or conservatorship. *See* PSA, § 3.3 and Compl., ¶ 32.

The Plaintiffs do not claim, however, that either of these events has occurred. They do not claim that an Indemnity Payment is owed or is even imminent. *See* Compl., ¶¶ 33-36. They do not claim that Ocwen FSB has been delinquent. Similarly, they do not claim that they have suffered any costs as a result of a receivership or conservatorship, or indeed that either event has actually happened. *See id.* As such, they do not claim that any condition presently exists or is imminent that would give PNC Fund IV the right to withhold future payments.

Instead, the Plaintiffs point to a nonexistent risk based upon the dissolution of Ocwen FSB. The Plaintiffs theorize that Ocwen FSB's dissolution may prevent it from being able to satisfy heretofore unknown indemnity obligations. *See* Compl., ¶ 35. It alleges that the dissolution "constitutes a breach and/or anticipatory breach" of some as yet unformed obligation.

# 3861232_v2

- 3 -

*See* Compl., ¶ 35. It is this reason, and this reason alone, that the Plaintiffs claim it is appropriate to withhold millions of dollars to which the defendants are legally entitled.[1] The Plaintiffs' argument is not made in good faith.

### *The De-Thrifting and Dissolution of Ocwen FSB*

Prior to returning its original thrift charter to the Office of Thrift Supervision ("OTS") on July 1, 2005, Ocwen FSB operated as a federal savings bank organized under the Home Owner's Loan Act. *See* Mosher Aff., ¶12. In November 2004, Ocwen FSB filed an Application for Voluntary Dissolution with the OTS. *See id.*

On June 13, 2005, OTS approved the plan of voluntary dissolution subject to certain conditions. One condition was that Ocwen FSB's parent, Ocwen Financial Corporation ("Ocwen Financial"), guarantee Ocwen FSB's obligations and enter into cash collateral and cash trust agreements with Ocwen FSB, all on terms acceptable to OTS. *See* Mosher Aff., ¶13.

On June 28, 2005, following OTS approval, Ocwen Financial entered into an Assignment and Assumption Agreement ("Assignment Agreement") with, among others, Ocwen FSB and OLS. A true and accurate copy of that agreement is attached to the Mosher Aff. at Tab 5. Under the Assignment Agreement, Ocwen FSB assigned all of its assets, liabilities and remaining business to OLS. *See* Mosher Aff., ¶14.

On that same date, and again with OTS approval, Ocwen Financial entered into a Guaranty with OLS for all obligations it had assumed from Ocwen FSB. A true and accurate copy of that Guaranty is attached to the Mosher Aff. at Tab 6. As Ocwen FSB's parent, Ocwen Financial's guaranty of OLS's obligations gave PNC and its related entities more security than

[1] The Plaintiffs also claim that the dissolution of Ocwen FSB is the equivalent of a receivership or conservatorship. *See* Compl., ¶ 36. That statement is inaccurate. *See* Mosher Aff., ¶¶12-16. Regardless, the Plaintiffs do not claim that they have incurred any costs associated with the dissolution, as required in Section 3.3 of the Eighth Amendment, so the relevance of this allegation is unclear.

# 3861232_v2

- 4 -

they had when the obligation ran to Ocwen FSB alone. *See* Mosher Aff., ¶¶16. Ocwen Financial

has greater financial resources than Ocwen FSB had by itself. *See id.*

Effective June 30, 2005, with the permission of OTS and after a long regulatory process,

Ocwen FSB terminated its status as a federal savings bank.

## *The Plaintiffs' Waiver of Any Right to Complain About the Dissolution and De-Thrifting of Ocwen FSB*

As early as April 12, 2005, more than two months before the de-thrifting, Ocwen

Financial formally notified PNC and its related entities of the de-thrifting process for Ocwen

FSB. *See* Mosher Aff., ¶17 and email dated April 12, 2005, attached to Mosher Aff. at Tab 7.

Thereafter, Ocwen and PNC engaged in multiple communications discussing the de-thrifting and

dissolution process prior to its occurrence. *See* Mosher Aff., ¶¶17-20 and emails attached to

Mosher Aff. at Tabs 8 and 9. Those communications continued after the de-thrifting and

dissolution occurred. *See* Mosher Aff., ¶¶21-22 and emails attached to Mosher Aff. at Tabs 10

and 11. During that entire time, neither PNC nor its affiliates complained about nor asserted any

rights regarding the process. *See* Mosher Aff., ¶23.

Most notably, *after the de-thrifting and dissolution of Ocwen FSB occurred, and after*

*PNC and its related entities were put on notice of that event,* PNC Fund IV nevertheless made a

substantial Payment under the PSA. *See* Mosher Aff., ¶24. Specifically, on August 26, 2005,

Ocwen provided PNC with an invoice for a Payment under the PSA. *See* Mosher Aff., ¶24 and

invoice attached to Mosher Aff. to Tab 12. On August 29, 2005, pursuant to its obligations

under the PSA, PNC Fund IV paid OLS the amount of $5,216,379.35. *See* Mosher Aff., ¶24 and

wire transfer receipt attached to Mosher Aff. at Tab 13. Thus, with full knowledge of the de-

thrifting and dissolution of Ocwen FSB, PNC Fund IV already has made a substantial Payment.

It never complained about the dissolution, nor asserted any rights in that regard. It is too late for

# 3861232_v2

- 5 -

it to do so now, especially where, as here, it simply has suffered no harm or consequence as a result of the dissolution.

## ARGUMENT

### I.   THE LEGAL FRAMEWORK UNDER RULE 67

Fed. R. Civ. P. 67 provides that "[i]n an action in which any part of the relief sought is a sum of money or the disposition of a sum of money ... a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of that sum or thing, whether or not that party claims all or any part of the sum or thing." As a preliminary matter, leave to deposit funds in the Court registry should be granted only when there is a legitimate dispute between the parties regarding the ownership of those funds. *See Baxter v. United Forest Prods. Co.*, 406 F.2d 1120, 1126 (8th Cir. 1969) ("Rule 67 was intended to apply only to a fund that is in dispute."); *Manufacturers Hanover Overseas Capital Corp. v. Southwire Co.*, 589 F. Supp. 214, 221 (S.D.N.Y. 1984) ("Rule 67 provides that funds may be placed on deposit with the court until it determines how the funds should be divided among the parties to a suit. The rule may be invoked only where there is a dispute concerning the funds."). *See also LTV Corp. v. Gulf States Steel, Inc.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992) ("The Rule 67 procedure provides a place of safekeeping for disputed funds pending the resolution of a legal dispute ... ").

Even in that circumstance, however, Rule 67 is not appropriate where the moving party seeks to use the procedural device to impair the other party's contractual rights. *See Prudential Ins. Co. of America v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986) (holding that Rule 67 does not "provide a means of altering the contractual relationships and legal duties of each party . . . [and] may not be used to effect a legal transfer of property between the litigants"); *LTV Corp.,* 969 F.2d at 1063 (same). Indeed, courts routinely reject efforts to utilize Rule 67 as a means of denying a party to a contract the fruits of that contract while the matter is in dispute.

# 3861232_v2

- 6 -

*See Baxter*, 406 F.2d at 1126 ("Rule 67 was not intended for such a one-sided before-judgment consequence.").

For example, in *General Pencil Co.*, the plaintiff sought a declaratory judgment that the defendant had breached a contract between the parties and that the plaintiff was therefore absolved from making future payments under that contract. *See General Pencil Co. v. George N. Kahn Company*, 246 F. Supp. 60, 61 (S.D.N.Y. 1965). Pursuant to Rule 67, the plaintiff then attempted to deposit with the court all sums that it would have been required to pay the defendant if the contract were effective and in force. *Id.*

In denying the plaintiff's Rule 67 motion, the Court observed that the motion was nothing more than an effort by the plaintiff to "preserve all its rights under the contract and to avoid the risk of a breach of contract on its part if its position should turn out to be wrong." *Id.* at 62. The Court further observed that such a result would deprive the defendant of the use of the contract sums during the pendency of the litigation, even though the final result of the lawsuit might be that the defendant was entitled to the contract sums all along. *Id.* Accordingly, the Court concluded that the deposit of the contract sums was not warranted, because "there is nothing in the history of Rule 67 or in the decisions construing it which suggests that it was designed to afford to a defendant an opportunity to deprive a plaintiff both of the benefits of his contract and of a right of action for its breach." *Id. See also Baxter v. United Forest Prods., Co.*, 406 F.2d at 1126 (denying Rule 67 motion where plaintiff sought to deposit sums owed under a contract with the court while it sought damages in tort arising from alleged fraud and misrepresentation in the execution of the contract: "Plaintiff simply wants its bargain and its money too. At the same time it seeks to deprive defendants of their right to claim forfeiture or sue for a breach of contract."); *Prudential Ins. Co. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1299-1300 (S.D.N.Y. 1986) (denying Rule 67 motion where plaintiff was seeking to deposit interest payments received

# 3861232_v2

- 7 -

under a contract with court so as to avoid ratifying the agreement by accepting the payments);
*Browning Ferris, Inc. v. Montgomery County*, 1990 WL 131937, at *1-2 (E.D. Pa. 1990)
(denying Rule 67 motion where defendant sought to deposit sums that were indisputably owed
under a contract for services rendered while it litigated plaintiff's obligation to pay separate and
unrelated contract fees). *But see Gulf State Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465,
1474-5 (5th Cir. 1987).

As these cases reflect, in deciding a Rule 67 motion, the Court may take into account the
likelihood of success on the merits and the potential harm to the opposing party. *See
Kalmanovitz v. G. Heilemen Brewing Co.*, 649 F. Supp. 638, 642 (D. Del. 1986) (motion to
deposit funds denied because opposing party could satisfy judgment and substantive related
motion was denied); *Prudential Ins. Co. of America*, 630 F. Supp. at 1300; *Gulf States*, 824 F.2d
at 1475 n.11; *Qwest Corp. v. City of Portland*, 204 F.R.D. 468, 470 (D. Ore. 2001) (court denied
Rule 67 motion where there was no showing that a judgment could not be satisfied or that the
moving party would be harmed absent the deposit of funds). As set forth below, by any measure,
the Plaintiffs' three-paragraph motion is without basis.

## II.    THE PLAINTIFFS HAVE NO LEGITIMATE BASIS TO REQUEST THAT THE COURT HOLD THE PAYMENTS

The Payments that are the subject of the motion are for the sale of partnership interests
that already have been transferred. *See* Mosher Aff., ¶¶4-5.  The Plaintiffs do not contend in the
Complaint or Motion that the Payments do not need to be made, nor that they have no
contractual duty to make them. *See* Compl. *generally.*  Rather, in the Complaint, the Plaintiffs
assert only theoretical future events that might impact whether a part of some future Payment
may be subject to offset.  That claim fails for several reasons.

First, no event under the PSA has occurred that would trigger any right of offset regarding the Payments. Further, in the unlikely event that some event occurs at some hypothetical date in the future, PNC Fund IV may simply offset that amount from a future Payment. That is the whole purpose of the offset provision. Plain and simple, there is no controversy about which the Plaintiffs can complain.

Second, to the extent the Plaintiffs base their request on the dissolution of Ocwen FSB, they long since have waived that argument. With full knowledge of the de-thrifting and dissolution of Ocwen FSB, PNC Fund IV already has made a Payment that it now claims need not be made. *See* Mosher Aff., ¶24. Of course, its doing so comes as no surprise; the dissolution of Ocwen FSB has not negatively impacted the Plaintiffs in any way.

In reality, the de-thrifting and dissolution of Ocwen FSB were part of an orderly process supervised by the OTS about which the Plaintiffs had full notice and did not complain. As early as April 2005, Ocwen FSB notified PNC and related entities of its intention to de-thrift and dissolve, and to replace Ocwen FSB with OLS as its successor-in-interest. *See* Mosher Aff., ¶¶17-22 and communications attached to Mosher Aff. at Tabs 7-11. PNC remained silent during that period, never complaining about that action. *See* Mosher Aff., ¶23

As a consequence, PNC and its related entities have waived any right to now complain about the dissolution. *See Thomas N. Carlton Estate, Inc. v. Keller*, 52 So.2d 131 (Fla. 1951) ("Waiver is the intentional relinquishment of a known right, and may be express or implied. Waiver may be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived. A party may waive any rights to which he is legally entitled … When a party waives a right under a contract he cannot, without the consent of his adversary, reclaim it.") (internal citations omitted); *Sentry Ins. v. Brown,* 424 So.2d 780, 784 (Fla. Dist. Ct. App. 1982) ("Waiver is either an intentional or voluntary relinquishment of a known right, or

# 3861232_v2

- 9 -

conduct giving rise to an inference of the relinquishment of a known right. Moreover, if a party waives a right provided under a contract, it cannot, without the consent of its adversary, reclaim it.") (internal citations omitted).[2]

Third, as the Plaintiffs have known for some time, and certainly knew before this motion was filed, Ocwen FSB's, and now OLS's, obligations under the PSA and related documents are fully guaranteed by Ocwen Financial. *See* Mosher Aff., ¶¶25-26. In fact, information regarding the Guaranty was placed on Ocwen's website. *See* Mosher Aff., ¶27 and website, attached to Mosher Aff. at Tab 18. Ocwen Financial provides greater financial protection than even Ocwen FSB provided, such that the Plaintiffs are, if anything, in a better financial position than before the de-thrifting of Ocwen FSB. *See* Mosher Aff., ¶16.

Finally, questions of personal jurisdiction exist as well. In the Complaint, the Plaintiffs allege, accurately, that the parties agreed to Delaware as the forum for the Operating Agreement. They fail to note, however, that no such clause exists in the PSA, which is a separate and distinct agreement and one of dozens between various PNC and Ocwen entities.[3] In fact, as noted, the PSA calls for the application of Florida law. Before deciding on the present motion, the Court may need to resolve whether jurisdiction exists in the first instance.

## CONCLUSION

Based upon the foregoing, the Plaintiffs offer no legitimate basis for asking this Court to deposit up to $17 million in Payments otherwise due and owing to OLS. If decided today, this Court would have to declare that PNC Fund IV is required to make the Payments. In the extraordinarily unlikely event that any offset becomes necessary, PNC Fund IV still will have the right to offset the disputed amount from future payments. Finally, failing that scenario, as the

---

[2] The PSA provides that Florida law governs. *See* PSA, § 9.3.
[3] Indeed, this lawsuit is one of four lawsuits presently pending between the companies, with two pending in Massachusetts and a third in Florida.

# 3861232_v2

- 10 -

Plaintiffs well know and did not complain about, Ocwen Financial has tremendous resources to

return any overpayment, should that happen. Under no scenario, therefore, are the Plaintiffs

entitled to the relief requested.

The defendants, Ocwen Federal Bank FSB, Ocwen Financial Corporation and Ocwen

Loan Servicing LLC, respectfully request that this Court deny the Plaintiffs' motion.

Dated: June 22, 2006

SAUL EWING LLP

By: _____

Domenic E. Pacitti (DE Bar No. 3989)
Michael F. Bonkowski (DE Bar No. 2219)
222 Delaware Avenue, 12th Floor
Wilmington, DE 19801
(302) 421-6864
(302) 421-5881
dpacitti@saul.com

Attorneys for Defendants
OCWEN FEDERAL BANK FSB, OCWEN
INVESTMENT CORPORATION, and OCWEN
LOAN SERVICING, LLC

OF COUNSEL:

Joshua C. Krumholz *(not yet admitted)*
Elizabeth M. Mitchell *(not yet admitted)*
Benjamin M. McGovern *(not yet admitted)*
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700 (telephone)
(617) 523-6850 (facsimile)
joshua.krumholz@hklaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COLUMBIA HOUSING/PNC INSTITUTIONAL
FUND IV LIMITED PARTNERSHIP,
COLUMBIA HOUSING SLP CORPORATION,
OCWEN 2000-LLC, PNC BANK, and
COLUMBIA HOUSING/PNC FUND IV, INC.,

Plaintiffs,

Civil Action No. 06-371

v.

OCWEN FEDERAL BANK FSB, OCWEN
INVESTMENT CORPORATION, and OCWEN
LOAN SERVICING, LLC

Defendants.

## CERTIFICATE OF SERVICE

I, Domenic E. Pacitti, Esquire, hereby certify that on June 22, 2006, I electronically filed

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO DEPOSIT

FUNDS INTO THE COURT REGISTRY with the Clerk of Court using CM/ECF which will

send notification of such filing. A copy of the document was served on the following counsel in

the manner indicated:

**VIA REGULAR MAIL**

Karen Lee Turner
Michael Busenkell
Eckert Seamans Cherin & Jellott
300 Delaware Avenue, Suite 1360
Wilmington, DE 19801

**VIA REGULAR MAIL**

Charles L. Perry
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, TX 75201

SAUL EWING LLP

Domenic E. Pacitti (DE Bar No. 3989)
222 Delaware Avenue, 12th Floor
Wilmington, DE 19801
(302) 421-6864
(302) 421-5881
dpacitti@saul.com