IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COLUMBIA HOUSING/PNC | § | |
| INSTITUTIONAL FUND IV LIMITED | § | NO. 06-371 |
| PARTNERSHIP, COLUMBIA | § | |
| HOUSING SLP CORPORATION, | § | |
| OCWEN 2000-LLC, PNC BANK, and | § | |
| COLUMBIA HOUSING/PNC | § | |
| FUND IV, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| OCWEN FEDERAL BANK FSB, | § | |
| OCWEN INVESTMENT | § | |
| CORPORATION, and OCWEN | § | |
| LOAN SERVICING, LLC, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR RECONSIDERATION/REARGUMENT OF COURT'S JUNE 22, 2006 ORDER**

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

PRELIMINARY STATEMENT .............................................................................. 1

FACTUAL BACKGROUND .................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 2

THE COURT HAS DISCRETION TO PERMIT A RULE 67 DEPOSIT ..................................... 2

# TABLE OF AUTHORITIES

## CASES

*Dwyer v. Lavigne*, 64 N.E.2d 356 (Mass. 1996)........................................................................4

*Engineered Medical Systems, Inc. v. Despotis*, 2006 U.S.Dist. LEXIS 20324
    (S.D. Ind. 2006) ........................................................................................................3

*Gulf State Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465 (5th Cir. 1987)
    *modified on other grounds* 831 F.2d 557 (5th Cir. 1987)........................................3

*New Jersey Dept. of Treasury v. Visara Int'l, Inc.*, 166 Fed. Appx. 639, 641 (3rd
    Cir. 1977) ..................................................................................................................4

*Schwartz v. Centennial Ins. Co.*, 1998 WL 77940 (Del. Ch. 1980) ................................4

## STATUTES AND RULES

26 U.S.C. § 6501.............................................................................................................8

Fed.R.Civ.P. 67...............................................................................................................3

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 253........................................................................4

17A Am.Jur.2d *Contracts* § 725 ....................................................................................4

Plaintiffs Columbia Housing/PNC Institutional Fund IV Limited Partnership ("PNC Fund IV"), Columbia Housing SLP Corporation, Ocwen 2000-LLC, PNC Bank, and Columbia Housing/PNC Fund IV, Inc. ("Fund IV, Inc.") submit this their Response to Defendants' Motion for Reconsideration/Reargument of Court's June 22, 2006 Order (Defendants' Motion"), as follows:

## Nature and Stage of Proceedings

1.    Plaintiffs filed their Complaint and Motion for Leave to Deposit Funds Into the Court Registry on June 5. At that time, no counsel for any Defendant had entered an appearance. On June 19, Mr. Krumholz, one of the counsel for Defendants, wrote a letter requesting that the motion for leave be withdrawn. (*See* Exhibit A). Plaintiffs' counsel responded to that letter on June 20. *(See* Exhibit B). On June 22, 2006, the Court granted the Plaintiff's motion, and Defendants filed their Opposition to Plaintiffs' Motion for Leave to Deposit Funds Into the Court Registry. On June 30, Defendants filed their Motion for Reconsideration/Reargument of Court's June 22, 2006 Order.

## Preliminary Statement

2.    Plaintiffs have no objection to the Court considering Defendants' contentions regarding the appropriateness of permitting deposit under Fed.R.Civ.P. 67. However, Plaintiffs believe that the Court should exercise its discretion to reaffirm its prior order. Plaintiffs request that the prior order remain in effect during the Court's consideration of Defendants' position.

## Factual Background

3.    This case involves a series of inter-related agreements between the parties:

   a.    An Amended and Restated Operating Agreement of Ocwen 2000-LLC (the "Ocwen 2000 Operating Agreement") entered into on October 30, 2001, to be effective as of September 1, 2001, by Ocwen Federal Bank

1

FSB ("Ocwen FSB") as managing member (the "Managing Member") and

PNC Fund IV as investor member (the "Investor Member").

b.    A Purchase and Sale Agreement ("PSA") dated as of September 1, 2000,

entered into by Ocwen FSB (on its own behalf and on behalf of Selling

Partnerships identified in the PSA), Ocwen 2000 LLC ("Ocwen 2000"),

Ocwen Investment, and PNC Fund IV.

c.    An Eighth Amendment to the Purchase and Sale Agreement Including

Capital Contribution Agreement ("Eighth Amendment") entered into

effective September 1, 2001.

d.    A Tax Indemnity Agreement ("Tax Indemnity") dated September 1, 2001,

given by Ocwen FSB to PNC Fund IV, PNC Bank and Fund IV, Inc.

4.    The case involves questions arising out of the voluntary dissolution of Ocwen

FSB, and the impact of such dissolution on the inter-related agreements.

## Summary of Argument

5.    The Court properly exercised its discretion to permit deposit of disputed funds

into the registry of the Court.

## The Court has Discretion to Permit a Rule 67 Deposit

6.    Rule 67 provides:

> In an action in which any part of the relief sought is a judgment for
> a sum of money or the disposition of a sum of money or the
> disposition of any other thing capable of delivery, a party, upon
> notice to every other party, and by leave of court, may deposit with
> the court all or any part of such sum or thing, whether or not that
> party claims all or any part of the sum or thing. . . .[1]

---

[1]    The last clause was added by amendment in 1983. The amendment was the result of cases restrictively applying the rule. *See* Advisory Committee Notes to Rule 67.

In *Gulf State Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465, 1474-75 (5th Cir. 1987)

*modified on other grounds,* 831 F.2d 557 (5th Cir. 1987), the court stated:

> The purpose of the Rule 67 is "to relieve the depositor of
> responsibility for a fund in dispute," such as in an interpleader
> action.   The 1983 amendment to Rule 67 makes clear that the
> depositor may have an interest in the deposited funds.  Once funds
> are deposited, the court should determine ownership and make
> disbursements. (Citations omitted).

Here, the Court has discretion to permit, and appropriately permitted, deposit into the

registry.   *See* 13 Moore's Fed.Prac. § 67.02 (3d Ed.).   Plaintiffs requested relief includes a

request that the Court determine that they "are not obligated to make any further payments under

the PSA or the Eight Amendment," as well as relief based on the breach of the Tax Indemnity.

These funds are the subject of the registry deposit.  As the Court noted in *Gulf States*:

> GSU could have breached its contracts by and withheld money
> from Southern and the court, but we see no reason to force GSU to
> do so.  We do not fault GSU for making deposits under Rule 67 as
> the district court decides those are proper.

*Accord, Engineered Medical Systems, Inc. v. Despotis*, 2006 U.S. Dist. Lexis 20324 *9 (S.D.

Ind. 2006) (*See* Exhibit C).

    7.    By this action, Plaintiffs seek a declaration from this Court regarding various

parties' rights and obligations under a series of agreements that have been impacted by the

dissolution of Ocwen FSB - namely, the Ocwen 2000 Operating Agreement, the Purchase and

Sale Agreement ("PSA"), the Eighth Amendment, and the Tax Indemnity.

    8.    The voluntary dissolution of Ocwen FSB has prevented its ability to perform

under its agreements, and constitutes a breach and/or anticipatory breach of same.  "A party who

voluntarily becomes unable to perform as agreed repudiates the contract, giving rise to an

immediate right of action."  17A Am.Jur.2d *Contracts* § 725; Corbin on Contracts § 984 (Interim

Edition 2002).    Ocwen FSB could not assign or relieve itself of its contractual obligations without the consent of Plaintiffs.  *New Jersey Dept. of Treasury v. Visara Int'l, Inc.*, 166 Fed. Appx. 639, 641 (3d Cir. 2006); *Schwartz v. Centennial Ins. Co.*, 1998 WL 77940, 2 (Del. Ch. 1980); *Dwyer v. Lavigne*, 64 N.E.2d 356, 357 (1946).  As stated in Restatement (Second) of Contracts § 253 (62): "Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance."

     9.     Ocwen FSB unilaterally chose to dissolve, and, according to ¶ 14 of the Mosher Affidavit, transferred at least the majority of its assets to other entities.[2]  Defendants do not suggest that Ocwen FSB retains any ability to perform under its agreements.  The dissolution has prevented Ocwen FSB's ability to perform.  It cannot honor its Tax Indemnity, cannot honor the Investor Put Option under the PSA, and has breached numerous representations and warranties. As a result, a dispute exists as whether any payments remain due by Plaintiffs under the PSA and Eighth Amendment, as well as Ocwen FSB's breaches of the other agreements, including the Tax Indemnity.

     10.     Defendants contend that Ocwen Servicing became the Managing Member of Ocwen 2000 "in conformance with an Assignment and Assumption Agreement."  (Defendants' Motion at p. 5).  This argument is flawed because Ocwen Servicing is not, and could not be, the Managing Member of Ocwen 2000.  Ocwen Servicing could not succeed to Ocwen FSB's membership interest without written consent of Fund IV.  Defendants do not suggest that written consent was received, nor do they attach any document purporting to be written consent.  The

---

[2]     Actually, the Assignment Agreement anticipated significant assets, being transferred to Marathon Bank, Rocaille Acquisition and Investors Mortgage Insurance Housing Company, Subsidiary, Inc. (Mosher Affidavit, Exhibit 5).  It also ignores the carve-out for assets that required prior consent that had not been obtained. See ¶¶ 10-13).

Declaration of Mr. Bric, on the other hand, affirmatively states that no such consent was given. Defendants attach e-mails *asking* for written consent, but *asking* for written consent is not the same as *receiving* written consent.

11.    Section 6.2 of the Ocwen 2000 Operating Agreement provides that the "Managing Member (Ocwen FSB) may transfer its interest in the Company . . . *only with the prior written consent of the Investor Member*." The Investor Member, PNC Fund IV, has not consented to any such transfer in writing (or otherwise).

12.    Defendants rely on an Assignment and Assumption Agreement ("Assignment Agreement") as effecting the purported transfer of the membership interest from Ocwen FSB to Ocwen Servicing.    (Mosher Affidavit, Exhibit 5).    However, the Assignment Agreement confirms that there has been no effective transfer of the membership interest to Ocwen Servicing. The Assignment Agreement specifically excludes any assignment to Ocwen Servicing where consents were required and were not obtained prior to closing.

13.    Section 3.3(a) of the Assignment Agreement provides that the transfer of assets from Ocwen FSB to Ocwen Servicing will be pursuant to an Instrument of Assignment (Exhibit E to the Assignment Agreement).

14.    The Instrument of Assignment provides that "as to any lease, contract, agreement, permit or other authorization included in the OLS Assigned Assets *which cannot be* sold, *transferred*, assigned, conveyed or delivered effectively *without the consent of a third party, which consent has not been obtained, this Instrument shall be of no force or effect until such requisite consent is obtained*, whereupon this Instrument shall become of full force and effect with respect thereto." (Emphasis added).

15.     Section 6.2 of the Assignment Agreement also provides that "[w]ith respect to any license, certificate, approval, authorization, agreement, contract, lease, easement and other commitment included in the . . . OLS[3] Assigned Assets that requires the consent of any third Person to the transaction contemplated by the Agreement, if any such consent has not been obtained prior to the Closing, thereafter the Stockholders shall cooperate with OLS at its request in endeavoring to obtain such consent promptly, and if any such consent is unobtainable, to use its reasonable best efforts to secure to OLS the benefits thereof in some other manner."

16.     Thus, the purported transfer from Ocwen FSB to Ocwen Servicing did not occur because the condition contained in the Ocwen 2000 Operating Agreement, the written consent of PNC Fund IV, was not obtained.

17.     Additionally, Defendants own document, the Instrument of Assignment, on its face confirms that it does not transfer assets where consent has not been obtained.

18.     The dissolution of Ocwen FSB did in fact affect the parties' rights under the agreements, including the Tax Indemnity, the PSA, the Eighth Amendment, and the Ocwen 2000 Operating Agreement; Plaintiffs have set the resolution of these root issues before the Court for determination in this action.[4]   The parties' diametrically-opposed positions on this very issue demonstrates that there indeed exists a "dispute" concerning the PSA and payments thereunder.

19.     The Ocwen 2000 Operating Agreement provides that the representations and warranties of Ocwen FSB "will be true throughout the term of this Amended and Restated Operating Agreement."

20.     The representations and warranties include the following:

---

[3]     The Assignment and Assumption Agreement uses "OLS" to refer to Ocwen Servicing.

[4]     Complaint ¶¶ 27-29.

(a)    "The Managing Member has and shall maintain until at least five (5) years after the due date of the last Capital Contribution Payment[5] a net worth sufficient to permit it to fulfill all of its obligations under this Agreement." (Section 9.1.3).

(b)    "no Event of Withdrawal [which includes voluntary dissolution] has occurred with respect to the Managing Member" (Section 9.1.4).

(c)    "The Managing Member has been duly organized, is validly existing and in good standing . . ." (Section 9.1.6).

21.    Section 6.1 of the PSA includes a representation and warranty by Ocwen FSB (on its own behalf and on behalf of the Selling Partnerships and LLC), Ocwen Investment and Ocwen 2000 that "Ocwen [FSB] is chartered under the laws of the United States as a federal savings bank, and its charter is in full force and effect."

22.    Section 4.6 of the Eighth Amendment states that "[a]ll representations, warranties, covenants and indemnities contained herein and in [the PSA] shall survive the execution and delivery of this Agreement and continue in full force and effect" until events which have not yet occurred, including "the expiration of the statute of limitations for federal income tax purposes with respect to any federal tax return filed by [PNC Fund IV] which is affected by any of the transactions . . . ."[6]

23.    Each of the foregoing representations and warranties was breached by the dissolution of Ocwen FSB.

24.    The PSA, which was entered into in September 2000, related to Fund IV's purchase of interests in a series of Operating Partnerships, each of which owned and operated

---

[5]    Under the Eighth Amendment, the last due date is in 2014. (Mosher Affidavit, Exhibit 2 at p. 12). Thus, Ocwen FSB was required to maintain an adequate net worth until at least 2019.

[6]    Tax credits are projected to continue until at least 2013. (Mosher Affidavit, Exhibit 2 at p. 13). The general statute of limitations for federal income tax purposes is (at least) three (3) years. 26 U.S.C. § 6501.

"apartment complexes or single family home complexes . . . operated under, [and] subject to the requirements of, Section 42 of the Internal Revenue Code." (PSA § 24).

25.     The PSA further stated the "forecasted remaining, unused low income housing tax credits under Section 42 of the Code . . . together with the forecasted material tax benefits . . ." in Exhibit III to the PSA. (PSA § 24). The tax credits and material tax benefits listed in such Exhibit III exceeded $74 million and $108 million, respectively.

26.     Also under the PSA, Fund IV had a "Put Option" which could be exercised in 2001, to require Ocwen FSB to repurchase the interest in one or more of the Operating Partnerships.

27.     As of the date of the Eighth Amendment in 2001, Fund IV had elected to not exercise the Put Option as to many of the Operating Partnerships. However, it retained its Put Option as to several of the projects. The Eighth Amendment provided:[7]

> The parties[8] hereto have agreed to extend the payment schedule for the payment of the Remaining Subject Interests Purchase Price from the dates and amounts with respect thereto set forth in the Prior Agreement and the Promissory Notes . . . [to] the dates and in the amounts specified in Section 1.1 below; . . . The parties hereto acknowledge and agree that such extension and amendment of the payment schedule and the other amendments set forth in this Agreement have been agreed to in consideration for the waiver by the Purchaser of the Put Option with respect to the Remaining Subject Interests and in consideration of the other mutual agreements of the parties set forth herein. . . .
>
> **Section 3.1. Ocwen Indemnity.** The parties hereto acknowledge and agree that this Agreement, including without limitation the termination of the Put Option and the extension and amendment of the payment of the Remaining Interests Purchase Price as Capital Contributions as set forth in Section 1.1 above, were made at the request of Ocwen and agreed to by the Investor as an

---

[7]    The Put Option as to one Operating Partnership was extended for three months and was not terminated.

[8]    The Eighth Amendment used "Ocwen" to refer to "Ocwen FSB" and "Purchaser" or "Investor" to refer to Fund IV.

accommodation to Ocwen and so as to prevent the Investor from exercising the Put Option with respect to the Remaining Subject Interests. In consideration thereof, Ocwen is executing and delivering to the Investor concurrently with the execution and delivery thereof of this Agreement, a "Tax Indemnity Agreement" dated as of the date of this Agreement, which indemnifies the Investor with respect to any loss of or with respect to Projected Tax Credits by reason of this Agreement and/or the arrangements set forth herein. However, the foregoing description is for convenient reference only, and Ocwen's liability under such indemnity shall be limited to its obligations as set forth in such Tax Indemnity Agreement.

28. The Eighth Amendment also created a new Investor Put Option (Section 2.3) that Fund IV could exercise after all payments related to any particular Operating Partnership. This Investor Put Option requires Ocwen FSB to repurchase the Operating Partnership Interest at fair market value. Pursuant to the Exhibit A – Payment Schedule to the Eighth Amendment, the Investor Put Option will arise as to two Operating Partnerships in 2008; as to two Operating Partnerships in 2010; and as to two Operating Partnerships in 2014.

29. Pursuant to Section 1.1 of the Eighth Amendment, PNC Fund IV was to make certain payments to Ocwen 2000 on certain conditions. Section 1.1 further provides that Ocwen 2000 will, in turn, make certain payments to Ocwen FSB "as agent" for the owner of "remaining subject interests," such owners being the "remaining operating partnerships."

30. As noted above, Defendants have breached their agreements, and Plaitniffs are therefore no longer obligated to make payments.

31. Additionally, Section 3.3 of the Eighth Amendment provides that the obligation to make payments is subject to offset, *inter alia*, for "the amount of any 'Indemnity Payment' which is delinquent" [under the Tax Indemnity], as well as any costs incurred as a consequence of "any receivership or conservatorship of Ocwen initiated by the [FDIC] or any other appropriate federal banking agency. . . ."

32.    Pursuant to the Tax Indemnity, Ocwen FSB agreed to indemnify PNC Fund IV, PNC Bank and Fund IV, Inc., against tax credit shortfalls and other tax liability.

33.    Defendants contend Plaintiffs should be restricted to future offset rights.  This ignores the material change, due to Ocwen FSB's unilateral decision to dissolve.  Such action, without Plaintiffs' consent, breached Ocwen FSB's obligations.

34.    Plaintiffs bargained for, and received, the Tax Indemnity from Ocwen FSB, a federally-regulated savings bank.  Plaintiffs did not bargain for an indemnity from Ocwen Services or Ocwen Financial, or agree to substitute either Ocwen Servicing or Ocwen Financial in lieu of Ocwen FSB.

35.    Moreover, the substitute Guaranty by Ocwen Financial provides that:

> "*Termination Date*" means the later of (a) the sixth anniversary of the date on which the FSB's federal bank charter is cancelled and (b) the date on which both of the following have been indefeasibly paid in full cash: (i) all Guaranteed Obligations with respect to which a Claim has been asserted (whether under this Guaranty or otherwise) on or prior to the sixth anniversary of the date on which the FSB's federal bank charter is cancelled and (ii) all other amounts payable by the Guarantor under this Guaranty (whether in respect of enforcement costs, indemnification payments or otherwise). (Mosher Affidavit, Exhibit 6).

However, the respective obligations of the parties, including payment of tax credits, extend until at least 2014, and receipt of tax credits extends until at least 2013.  (Mosher Affidavit, Exhibit 2, at p. 12-13).  Under applicable representations and warranties, Ocwen FSB was obligated to maintain an adequate net worth until 2019.  For all of these reasons, a substitute guaranty by Ocwen Financial, to which Plaintiffs did not consent, does not eliminate the issues presented by the dissolution of Ocwen FSB.

36.    Future offset rights are not adequate because the amounts available for offset are less than the liabilities of Ocwen FSB.  Defendants would defer liability for the clear breaches

until after the payments have been long-dissipated, leaving Plaintiffs with empty promises. A declaratory judgment as to the parties' obligations, including whether Plaintiffs are obligated to make payments to Ocwen FSB, which has been dissolved, notwithstanding Ocwen FSB's prior breaches, is appropriate for declaratory judgment, and supports permitting Plaintiffs to deposit funds into the registry, pending resolution of those disputes. Nor does the question of offset address the claim that Plaintiffs are no longer obligated to make payments due to the prior breaches by Defendants.

37. The Court should continue to authorize deposits into the registry, pending further rulings by the Court on the merits of the parties' disputes.

Respectfully submitted,

By: _____
    Michael G. Busenkell (Bar No. 3933)
    **Eckert Seamans Cherin & Mellott, LLC**
    300 Delaware Avenue, Suite 1360
    Wilmington, DE 19801
    (302) 425-0430
    (302) 425-0432 (fax)

ATTORNEYS FOR PLAINTIFFS

Of Counsel:

Charles L. Perry, Esquire
ANDREWS KURTH LLP
State Bar No. 15799900
1717 Main Street, Suite 3700
Dallas, TX 75201
Email: cperry@akllp.com
Telephone: (214) 659-4681
Facsimile: (214) 659-4894
(pro hac vice pending)


Dated: July 17, 2006

# EXHIBIT A

08/19/2006 18:04 FAX                    HOLAND & KNIGHT                              ☑ 001/002

# Holland+Knight

Tel  617 523 2700
Fax 617 523 6850

Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
www.hklaw.com

| TO: | | |
|---|---|---|
| **Karen Lee Turner, Esq.** | Eckert Seamans Cherin & Mellot, LLC | **(302) 425-0432** |
| NAME | COMPANY/FIRM | FAX NUMBER |
| Wilmington | DE | (302) 425-0430 |
| CITY | STATE | (TELEPHONE NUMBER) |

| TO: | | |
|---|---|---|
| **Charles L. Perry, Esq.** | Andrews Kurth LLP | **(214) 659-4894** |
| NAME | COMPANY/FIRM | FAX NUMBER |
| Dallas | TX | (214) 7659-4681 |
| CITY | STATE | (TELEPHONE NUMBER) |

| FROM: | | |
|---|---|---|
| Joshua C. Krumholz | (617) 573-5820 | 2 |
| NAME | TELEPHONE | TOTAL PAGES (Including Cover Sheet) |

| FOR THE RECORD: | | |
|---|---|---|
| DATE: June 19, 2006 | URGENCY: ☐ SUPER RUSH | ☐ RUSH ☐ REGULAR |
| FAXED BY: | FILE #: 759059.00055 | CLIENT NAME: Ocwen |

| CONFIRMED: ☐ YES ☐ NO | NAME: | TIME: |
|---|---|---|
| If you did not receive all of the pages or find that they are illegible, please call **617 523 2700** | **CONFIDENTIALITY NOTICE:** This facsimile, along with any documents, files, or attachments, may contain information that is confidential, privileged, or otherwise exempt from disclosure. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, printing, distribution or use of any information contained in or attached to this facsimile is **strictly prohibited**. If you have received this facsimile in error, please immediately notify us by facsimile or by telephone collect at the numbers stated above, and destroy the original facsimile and its attachments without reading, printing, or saving in any manner. Your cooperation is appreciated. Thank you. | |

**MESSAGE:**

# 3857932_v1

# Holland+Knight

Tel  617 523 2700
Fax  617 523 6850

Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116-3889
www.hklaw.com

Joshua C. Krumholz
617 573 5820
joshua.krumholz@hklaw.com

June 19, 2006

*Via facsimile*

Karen Lee Turner, Esq.
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1630
Wilmington, DE 19801

*Via facsimile*

Charles L. Perry, Esq.
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, TX 75201

Re:  *Columbia Housing/PNC Institutional Fund IV Limited Partnership, et al.*
*v. Ocwen Federal Bank FSB, et al.*,
United States District Court for the District of Delaware, Civil Action No. 06-371

Dear Ms. Turner and Mr. Perry:

We write with regard to your client's Motion for Leave to Deposit Funds into the Court Registry, which apparently is based upon Fed. R. Civ. P. 67. Based upon the research that we have performed to date, we see no good faith basis for bringing that motion. See Prudential Ins. Co. v. BMC Indus., Inc., 630 F. Supp. 1298, 1299-1300 (S.D.N.Y. 1986) (denying Rule 67 motion where plaintiff was seeking to deposit interest payments received under a contract with court so as to avoid ratifying the agreement by accepting the payments); Dinkins v. Gen. Aniline & Film Corp., 214 F. Supp. 281283 (S.D.N.Y. 1963) (denying Rule 67 motion where defendant was attempting to deposit payments due under a contract with the court rather than paying them to plaintiff).

Accordingly, by this letter, we request that you withdraw the motion. Should you refuse to do so, please be advised that we will seek any and all available remedies from the Court, including the costs associated with defending this motion.

We ask that you let us know by the close of business Tuesday, June 20, 2006 whether you will withdraw the motion. If you have any questions, please feel free to call at any time.

Very truly yours,

Joshua C. Krumholz

JCK/cao

# 3851753_v1

# EXHIBIT B



ANDREWS
ATTORNEYS KURTH LLP

1717 Main Street, Suite 3700
Dallas, Texas 75201
214.659.4400 Phone
214.659.4401 Fax
andrewskurth.com

Charles Perry
214.659.4681 Direct
214.659.4894 Fax
charlesperry@andrewskurth.com

June 20, 2006

**VIA FAX – (317) 523-6850**
Joshua C. Krumholz
Holland & Knight LLP
10 St. James Avenue
Boston, MA  02116-3889

Re:    Cause No. 06-371; Columbia Housing/PNC Institutional Fund IV Limited
       Partnership, et al. v. Ocwen Federal Bank FSB, et al.; In the United States District
       Court for the District of Delaware

Dear Mr. Krumholz:

We are in receipt of your letter dated June 19, regarding the motion previously filed with the Court.  Contrary to your statements, the motion is appropriate under both the express language of Fed. R. Civ. P. 67, and case law applying the rule.  *E.g., Gulf State Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465, 1474-75 (5th Cir. 1987) *modified on other grounds,* 831 F.2d 557 (5th Cir. 1987).  I note your reliance on *Dinkins v. General Anline & Film Corp.*, 214 F. Supp. 281 (S.D.N.Y. 1963). Perhaps  you overlooked the fact that the Advisory Committee noted  that  the  1983 amendment to Rule 67 was intended to  correct  the  overly-restrictive construction of the rule by *Dinkins*.

I  trust  that after reviewing the above, you will reconsider your position that the motion should be withdrawn.

Sincerely,

Charles L. Perry

CP:jv

cc:    Kitt Turner (Via Fax – 302/ 425-0432)
       Eckert Seamans Cherin & Mellott, LLC
       300 Delaware Avenue, Suite 1630
       Wilmington, DE  19801

# EXHIBIT C

LEXSEE

**ENGINEERED MEDICAL SYSTEMS, INC., Plaintiff, v. GEORGE M. DESPOTIS, M.D., Defendant.**

**CASE NO.1:05-cv-0170-DFH-TAB**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

**2006 U.S. Dist. LEXIS 20324**

**April 14, 2006, Decided**
**April 14, 2006, Filed**

**PRIOR HISTORY:** Engineered Med. Sys. v. Despotis, 2005 U.S. Dist. LEXIS 27980 (S.D. Ind., Nov. 4, 2005)

**CORE TERMS:** deposit, royalty, default, cross-license, patent, license agreement, disputed, contractual, undisputed, purchaser, calculated, rescission, depositor, breaching, retaining, deposited, claimants', abused, seller, licensing agreement, written notice, sum of money, full amount, concedes, protest, off-set, license, offset, owed, owes

**COUNSEL:** [*1] For ENGINEERED MEDICAL SYSTEMS, INC., Plaintiff: Jane A. Dall, Nancy G. Tinsley, R. Trevor Carter, BAKER & DANIELS, Indianapolis, IN.

For M.D. GEORGE M. DESPOTIS, Defendant: Greg A. Small, Mark J. R. Merkle, KRIEG DEVAULT, Indianapolis, IN.

For ENGINEERED MEDICAL SYSTEMS, INC., Counter Defendant: Jane A. Dall, BAKER & DANIELS, Indianapolis, IN.

**JUDGES:** DAVID F. HAMILTON, JUDGE.

**OPINIONBY:** DAVID F. HAMILTON

**OPINION:**

ENTRY ON PLAINTIFF'S MOTION TO DEPOSIT DISPUTED FUNDS

Plaintiff Engineered Medical Systems, Inc. ("EMS")

has moved pursuant to Rule 67 of the Federal Rules of Civil Procedure for leave to deposit $ 99,528.90 with the court. EMS contends that this figure represents an amount of funds in dispute in this case. Defendant George M. Despotis, M.D., opposes the motion. For the reasons explained below, EMS's motion is denied in part and granted in part.

*Factual Background*

This case involves a dispute over a patent licensing agreement between EMS and Dr. Despotis. Dr. Despotis holds a patent for an endotracheal intubation device. In 1996, in exchange for royalty payments, Dr. Despotis granted EMS an exclusive license to make or sell products [*2] using his patent. Section 10.01 of the license allows EMS to reduce its royalty payments by as much as 50 percent in the event that EMS pays third parties to settle or satisfy claims of patent infringement.

In 1999, EMS entered into a cross-license agreement with Nellcor Puritan Bennett, Inc. ("NPB"). EMS and Dr. Despotis amended their license agreement to provide:

Notwithstanding the provisions of 10.01, EMS shall have no right to offset any costs or expenses together with any legal fees, liabilities or other claims associated with entering into a cross-license agreement with NPB against royalties payable to Despotis under this Agreement or arising from any claim relating to the consent granted by Despotis or any activities undertaken by or under the

2006 U.S. Dist. LEXIS 20324, *2

direction of EMS relating to the NPB cross-license agreement.

Section 10 05. EMS alleges that it later began producing and selling medical devices under the Despotis license, and then was sued by NPB for infringing two of its patents. The NPB suit claimed that EMS's activities were not covered by the 1999 cross-license. EMS and NPB settled the lawsuit by executing an amended cross-license in September 2003.

In January [*3] 2005, counsel for Dr. Despotis sent EMS a written notice of default on the parties' license agreement. Shortly thereafter, EMS tendered a check to Dr. Despotis for the full amount of royalties due for the 2003/2004 contract year ($ 106,384.05), without taking a deduction under Section 10.01 for payments made to NPB. However, it paid half of that amount "under protest."

EMS then filed this action seeking a return of half of the royalties for 2003/2004 and a declaratory judgment that it could reduce royalty payments to Dr. Despotis for the remainder of the contract term. The court previously denied Dr. Despotis's motion to dismiss or transfer venue. See Docket No. 36. On the merits, EMS's claim centers on the proper interpretation of the licensing agreement, and in particular the effects of the original provision for set-off of other patent royalties and the 1999 amendment specific to NPB. n1

n1 Dr. Despotis identifies two additional provisions of the amended license agreement as relevant to the dispute. See Def. Resp. Br. at 2. According to Dr. Despotis, Section 10.06 states: "The grant of the cross license to NPB shall have no effect on EMS's obligation to pay royalties for Licensed Device under Section 3.02 of the Agreement. . . ." According to Dr. Despotis, Paragraph 6 states: "EMS represents that there are no other offsets applicable to the payment of royalties to Despotis relative to licensed devices as of the date hereof, and each party acknowledges to the other that as of the date hereof, they have no knowledge of any defaults by the other under the terms of the Agreement."

[*4]

In this motion, EMS seeks to deposit funds with the court to prevent overpayment to Dr. Despotis in the event that the court ultimately finds for EMS on the merits. For the contract year 2004/2005, EMS has not paid any of the royalties that were due to Dr. Despotis by January 30, 2006. Without a deduction under Section 10.01, the amount owed is $ 99,528.90. Quinn Second Dec. P 2. EMS concedes that it owes Dr. Despotis 50 percent of this amount. Pl. Br. at 2. Nonetheless, EMS seeks to deposit the full amount with the court to prevent payment of the other 50 percent and, in effect, to off-set most of the funds it paid under protest for 2003/2004.

*Analysis*

Rule 67 of the Federal Rules of Civil Procedure provides in part:

> In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum or thing.

The purpose of Rule 67 is [*5] to relieve the depositor of responsibility for a disputed fund while the parties litigate its ownership. The Rule is invoked most frequently in cases of interpleader and tender of an undisputed sum. See 12 Wright & Miller, *Federal Practice & Procedure* § 2991 (1997 & Supp. 2005). Courts have held that Rule 67 "provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties [or rights] of the parties." *LTV Corp. v. Gulf States Steel, Inc. of Alabama,* 297 U.S. App. D.C. 50, 969 F.2d 1050, 1063 (D.C. Cir. 1992) (reversing order under Rule 67 that had effect of reducing contractual interest rate after default) (internal quotation and citations omitted), quoted by *United States v. Tully,* 288 F.3d 982, 987 (7th Cir. 2002) (upholding district court's decision to disburse proceeds from property deposited under Rule 67; noting that issue was whether

Page 2

2006 U.S. Dist. LEXIS 20324, *5

claimants' *current* interests in the proceeds were superior to government's statutory lien and not whether claimants were entitled to equitable liens). The decision whether to allow a Rule 67 deposit lies [*6] within the discretion of the district court. *LTV Corp.*, 969 F.2d at 1063, citing *Gulf States Utilities Co. v. Alabama Power Co.*, 824 F.2d 1465, 1475 (5th Cir. 1987), *modified on other grounds*, 831 F.2d 557 (5th Cir. 1987).

Fifty percent of EMS's proposed deposit is not in dispute. EMS concedes that it owes Dr. Despotis $ 49,764.45 in royalties for the 2004/2005 contract year. What EMS seeks to do, however, is deposit with the court even this undisputed amount from 2004/2005 to off-set its earlier payment to Dr. Despotis of 100 percent of the amount he claimed as royalties for 2003/2004. Thus, as applied to the undisputed portion of the 2004/2005 royalties, EMS's motion is equivalent to a motion seeking to require *Dr. Despotis* to deposit funds with the court. The tactical and strategic benefits to EMS of such a maneuver are obvious. Rule 67, however, cannot be used to require *another* party to make an *involuntary* payment to the court, even when the payment is in dispute. See *Qwest Corp. v. City of Portland*, 204 F.R.D. 468, 470 (D. Ore. 2001) (denying Rule 67 motion by defendant municipalities to require [*7] plaintiff to deposit disputed franchise payments in court); see also *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999) (in action for money damages, district court does not have power to issue preliminary injunction freezing defendant's assets in which no lien or equitable interest is claimed). EMS may not use a procedural rule like Rule 67 to undo its previous election of a course of action under the agreement. *E.g.*, *Prudential Ins. Co. of America v. BMC Industries, Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986) ("As several courts have held, Rule 67 may not be used to effect a legal transfer of property between the litigants.").

On the other hand, 50 percent of the calculated 2004/2005 royalty payment is truly in dispute now. Rule 67 permits a party to deposit disputed funds with the court despite retaining an interest in those funds. See Fed. R. Civ. P. 67 advisory committee's notes on 1983 amendment ("There are situations in which a litigant may wish to be relieved of responsibility for a sum or thing, but continue to claim an interest in all or part of it. In these [*8] cases the deposit-in-court procedure should be available; in addition to the advantages to the party making the deposit, the procedure gives other litigants assurance that any judgment will be collectible.").

Under the plain language of Rule 67, the circumstances in which a party might be allowed to deposit money with the court are quite broad, as long as the money is truly in dispute. In *Gulf States*, a purchaser of electricity sought to avoid its contractual obligations with the seller. 824 F.2d at 1469. Shortly after filing suit, the plaintiff moved under Rule 67 to deposit the money due under its contracts with the court. The district court granted the motion over the seller's objection. The Fifth Circuit held that the district court had not abused its discretion by accepting the plaintiffs deposits. 824 F.2d at 1475. The court distinguished cases where a purchaser affirms the contract, thereby retaining no interest in its owed payments so that they could not be considered truly in dispute. See, *e.g.*, *Baxter v. United Forest Products Co., Inc.*, 406 F.2d 1120 (8th Cir. 1969) (reversing district court's order that installments due under [*9] contract be deposited with court where plaintiff complained that harsh forfeiture provisions made rescission impractical and affirmed contract). The *Gulf States* court also noted that the plaintiff in its case could have proceeded by breaching its contracts and withholding payment from both the defendant and the court; but it saw no reason to force the plaintiff to do so.

Similarly, in this case, the court sees no reason at this time to force EMS to choose between breaching its agreement (and risking termination) n2 or paying Dr. Despotis the 50 percent of royalties that are in dispute. The parties have presented the court with a genuine dispute over the entitlement to 50 percent of the calculated royalties. Without considering the merits of that dispute, the court concludes that EMS is entitled to deposit half of the 2004/2005 royalties with the court pending the outcome of this litigation. See *Gulf States*, 824 F.2d at 1475 n.11 (noting that Rule 67 does not require that the moving party show likelihood of success on the merits before making a deposit with the court, but court may consider the depositor's chance for success on the merits in exercising its discretion). [*10]

n2 According to Dr. Despotis, Section 5.03 of the license agreement grants him the right to terminate the agreement if EMS does not cure a default within 90 days after receiving notice of default. On February 7, 2006, while this motion was

Page 3

2006 U.S. Dist. LEXIS 20324, *10

pending, Dr. Despotis sent a written notice of default to EMS for the royalties owed for the calendar year 2004/2005. See Def. Ex. A.

The cases cited by Dr. Despotis in opposition to EMS's motion involved different circumstances and are not applicable here. Dr. Despotis has not shown that a deposit of the disputed amount for contract year 2004/2005 would alter the contractual relationship or legal rights of the parties. Cf. *LTV Corp., 969 F.2d at 1063* (district court abused discretion by permitting purchaser of promissory note to deposit outstanding balance with court because deposit "effectively altered the terms of the contract" by substituting the market rate of interest for the higher default rate to which the parties had agreed in the note); *In re Dep't of Energy Stripper Well Exemption Litigation, 124 F.R.D. 217, 221 (D. Kan. 1989)* [*11] (denying Rule 67 motion where deposit would violate express terms of MDL settlement agreement that provided for established court escrow account); *Prudential Ins. Co., 630 F. Supp. at 1299-1300* (denying Rule 67 motion where plaintiffs seeking

rescission of agreement moved to deposit interest payments received under agreement with court to avoid ratification while ensuring later availability of funds).

*Conclusion*

EMS's motion to deposit funds in the amount of $ 99,528.90 with the court pursuant to Rule 67 of the Federal Rules of Civil Procedure (Docket No. 42) is granted in part and denied in part. EMS may deposit one-half of this amount ($ 49,764.45) with the court, because that figure represents the amount of royalties in dispute for the contract year 2004/2005. The deposit shall be held in an interest-bearing account.

So ordered.

Date: April 14, 2006

    DAVID F. HAMILTON, JUDGE

    United States District Court

    Southern District of Indiana

## CERTIFICATE OF SERVICE

I, Michael G. Busenkell, certify that on July 17, 2006 I caused a copy of the foregoing Plaintiffs' Response to Defendants' Motion For Reconsideration/Reargument of Court's June 22, 2006 Order to be served in the manner indicated on:

**Hand Delivery**
Domenic E. Pacitti (Bar No. 3989)
Saul Ewing LLP
222 Delaware Ave., Suite 1200
Wilmington, DE 19801

**Facsimile and U.S. Mail**
Joshua C. Krumholz
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

_____
Michael G. Busenkell (No. 3933)